**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MR LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>SILICON MOTION TECHNOLOGY CORPORATION and SILICON MOTION, INC.,<br><br>Defendants. | ) | Case No. 2:26-cv-00922<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MR Licensing LLC ("MR Licensing" or "Plaintiff") files this original Complaint against Defendants Silicon Motion Technology Corporation ("SMTC") and Silicon Motion, Inc. ("SMI Taiwan") (collectively, "Defendants" or "Silicon Motion") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1. MR Licensing LLC is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 313 South Washington Avenue, Marshall, Texas 75670.

2. Upon information and belief, Defendant SMTC is a corporation organized and existing under the laws of the Cayman Islands, with its principal place of business at Flat C, 19/F, Wing Cheong Commercial Building Nos. 19–25 Jervois Street, Hong Kong Island, Hong Kong. Upon information and belief, SMTC can be served via its registered agent Codan Trust Company (Cayman) Limited, Century Yard, Cricket Square, Hutchins Drive, P.O. Box 2681 GT, George Town, Grand Cayman, British West Indies. SMTC makes, uses, sells, and offers to sell the Accused

Instrumentalities (*see* paragraph 17), including throughout the United States and within the State of Texas and the Eastern District of Texas in particular.

3. Upon information and belief, Defendant SMI Taiwan is a corporation organized and existing under the laws of Taiwan, with its principal place of business at No. 162, Sec. 2, Fuxing 3rd Rd., Zhubei City, Hsinchu County 302052, Taiwan. SMI Taiwan makes, uses, sells, and offers to sell the Accused Instrumentalities (*see* paragraph 17), including throughout the United States and within the State of Texas and the Eastern District of Texas in particular.

4. Upon information and belief, Silicon Motion places its products and/or services, including those accused of infringement herein, into the stream of commerce which terminates in the Judicial District of the Eastern District of Texas.

5. The parties to this action are properly joined under 35 U.S.C. § 299 because the right to relief asserted against Silicon Motion jointly and severally arises out of the same series of transactions or occurrences relating to the making, using, offering to sell, selling and importing of the same products. Additionally, questions of fact common to both Silicon Motion entities will arise in this action.

## JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

7. This Court has specific and personal jurisdiction over Silicon Motion consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Silicon Motion has sufficient minimum contacts with the forum because Silicon Motion transacts substantial business in the State of Texas and in this Judicial District. Further, Silicon Motion has committed and continues to commit acts of patent infringement in the State of

Texas and in this Judicial District and elsewhere throughout the United States, as alleged in this Complaint. The Accused Instrumentalities are available for purchase in this Judicial District.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(c)(3) because SMTC and SMI Taiwan are foreign entities organized under the laws of the Cayman Islands and Taiwan, respectively, are not residents of the United States, and thus may be sued in any judicial district, including in the Eastern District of Texas.

## PATENTS-IN-SUIT

9. On July 12, 2011, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 7,979,658 B2 entitled "Secure Management of Memory Regions in a Memory" ("the '658 Patent").

10. On April 8, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 8,694,776 B2 entitled "Authenticated Memory and Controller Slave" ("the '776 Patent").

11. On September 19, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,767,303 B2 entitled "Authenticated Memory and Controller Slave" ("the '303 Patent").

12. MR Licensing is the sole and exclusive owner of all right, title and interest in the '658 Patent, the '776 Patent, and the '303 Patent (collectively, the "Patents-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. MR Licensing also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

13. MR Licensing has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

## FACTUAL ALLEGATIONS

14. The technologies described in the ’658 Patent were developed by Willy Obereiner and Hendrik Graulus and relate generally to controlling access to memory regions in a memory component. In one embodiment, the ’658 Patent teaches a memory component comprising an access management component that facilitates controlling access to memory regions that are respectively associated with authentication credentials, and that facilitates access to a memory region when received authentication information matches authentication information contained in a security record associated with the memory region.

15. The technologies described in the ’776 Patent were developed by Christophe Carvounas and Joël LeBihan and relate generally to the utilization of a memory as a slave to a host. In one embodiment, the ’776 Patent teaches a system comprising an external electronic memory component that comprises a plurality of memory locations and facilitates storage of data in at least a portion of the plurality of memory locations. The external electronic memory component is configured to be external from and communicatively connected to a host component, and to receive a request to perform at least one of a task, a function, or an operation, which is offloaded to the external electronic memory component by the host component. The system also comprises an optimized controller component configured to be part of the external electronic memory component. In response to the request, the optimized controller component is configured to perform the at least one of the task, the function, or the operation. In performance of the at least one of the task, the function, or the operation, the optimized controller component is configured to access a subset of the data stored in the portion of the plurality of memory locations in the external electronic memory component, and to perform the at least one of the task, the function, or the operation on the subset of the data to facilitate generation of result data that is based at least in part on the subset of the data. The optimized controller component is further configured to transmit the

result data to a host memory of the host component without transmission of the subset of the data to the host component and without allowance of access of the subset of the data by the host component.

16. The technologies described in the ’303 Patent were developed by Christophe Carvounas and Joël LeBihan and relate generally to the utilization of a memory as a slave to a host. In one embodiment, the ’303 Patent teaches a system comprising a memory that stores secure data and computer executable components, and a processor that executes computer executable components stored within the memory, including an optimized controller component. In response to receiving a request, the optimized controller component is configured to authenticate a host device associated with the memory and determine, based on the authentication of the host device, an availability of a task. In response to determining the task is available, the optimized controller component is configured to perform the task on the secure data to generate result data. The memory stores the secure data. The secure data is a subset of data other than a second subset of data that is used to access the secure data in the memory and other than a third subset of data that is used to decrypt the secure data. The host device is not permitted access to the secure data. The optimized controller component is further configured to transmit the result data to the host device without transmission of the secure data to the host device.

17. Silicon Motion has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import infringing products, including all Trusted Computer Group (TCG) Security Subsystem Class (SSC) Opal, Enterprise and Ruby compliant drives made and sold by Silicon Motion in the United States, including but not limited to: (i) FerriSSD PCIe/NVMe BGA SSD Ax Series (SM681 DRAM-less PCIe Gen3 x2; SM689 with embedded DRAM, PCIe Gen3 x4), including but not limited to SM681GXC AGST; SM681GXD AGST; SM681GXE

AGST; SM681GXF AGST; SM681GEC AGST; SM681GED AGST; SM681GEE AGST; SM681GEF AGST; SM681GXC AGSS; SM681GXD AGSS; SM681GXE AGSS; SM681GXF AGSS; SM681GEC AGSS; SM681GED AGSS; SM681GEE AGSS; SM681GEF AGSS; (ii) FerriSSD PCIe Gen4 x4 NVMe 2.0 Single-Chip SSD, Cx series, including but not limited to SM681GXD C8VP; SM681GXE C8VP; SM681GXF C8VP; SM681GXG C8VP; SM681GED C8VP; SM681GEE C8VP; SM681GEF C8VP; SM681GEG C8VP; SM681GXD C8VO; SM681GXE C8VO; SM681GXF C8VO; SM681GXG C8VO; SM681GED C8VO; SM681GEE C8VO; SM681GEF C8VO; SM681GEG C8VO; (iii) PCIe NVMe FerriSSD Bx series (PCIe Gen4 x4); (iv) FerriSSD Module PCIe/NVMe SSD Ax Series (M.2 2230/2242/2280), including but not limited to MD681GXCKAG3T; MD681GXDKAG3T; MD681GXEKAG3T; MD681GXFKAG3T; MD681GECKAG3T; MD681GEDKAG3T; MD681GEEKAG3T; MD681GEFKAG3T; MD681GXCKAG3S; MD681GXDKAG3S; MD681GXEKAG3S; MD681GXFKAG3S; MD681GECKAG3S; MD681GEDKAG3S; MD681GEEKAG3S; MD681GEFKAG3S; ME681GXCKAG3T; ME681GXDKAG3T; ME681GXEKAG3T; ME681GXFKAG3T; ME681GECKAG3T; ME681GEDKAG3T; ME681GEEKAG3T; ME681GEFKAG3T; ME681GXCKAG3S; ME681GXDKAG3S; ME681GXEKAG3S; ME681GXFKAG3S; ME681GECKAG3S; ME681GEDKAG3S; ME681GEEKAG3S; ME681GEFKAG3S; and (v) FerriSSD PCIe Gen4 NVMe Module (M.2 2242 / M.2 2280, M-key), including but not limited to MD681GXDBC82P; MD681GXEBC82P; MD681GXFBC82P; MD681GXGBC82P; MD681GEDBC82P; MD681GEEBC82P; MD681GEFBC82P; MD681GEGBC82P; MD681GXDBC82O; MD681GXEBC82O; MD681GXFBC82O; MD681GXGBC82O; MD681GEDBC82O; MD681GEEBC82O; MD681GEFBC82O; MD681GEGBC82O; ME681GXDBC82P; ME681GXEBC82P; ME681GXFBC82P; ME681GXGBC82P; ME681GEDBC82P; ME681GEEBC82P; ME681GEFBC82P;

ME681GEGBC82P; ME681GXDBC82O; ME681GXEBC82O; ME681GXFBC82O; ME681GXGBC82O; ME681GEDBC82O; ME681GEEBC82O; ME681GEFBC82O; ME681GEGBC82O (collectively, the "Accused Instrumentalities").

**COUNT I**
**(Infringement of the '658 Patent)**

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. MR Licensing has not licensed or otherwise authorized Silicon Motion to make, use, offer for sale, sell, or import any products that embody the inventions of the '658 Patent.

20. Silicon Motion has and continues to directly and/or indirectly infringe one or more claims of the '658 Patent, including without limitation, claim 1 of the '658 Patent.

21. Silicon Motion has and continues to directly infringe the '658 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '658 Patent.

22. Silicon Motion has and continues to indirectly infringe one or more claims of the '658 Patent by knowingly and intentionally inducing others, including but not limited to, Silicon Motion's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the '658 Patent.

23. Silicon Motion indirectly infringes one or more claims of the '658 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Silicon Motion's customers and end-users, in this Judicial District and elsewhere in the United States. For example, Silicon Motion's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the '658 Patent. Silicon

Motion induces this direct infringement at least via its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Silicon Motion's inducement, Silicon Motion's customers and end-users use Accused Instrumentalities and directly infringe the '658 Patent in a way Silicon Motion intends. Upon information and belief, Silicon Motion performs these affirmative acts with knowledge of the '658 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the '658 Patent.

24. Silicon Motion indirectly infringes one or more claims of the '658 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Silicon Motion's affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others' use and manufacture of the Accused Instrumentalities, such that the '658 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the '658 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Silicon Motion to be especially made or adapted for use in the infringement of the '658 Patent. Silicon Motion performs these affirmative acts with knowledge of the '658 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that it causes the direct infringement of the '658 Patent.

25. A preliminary chart mapping the elements of claim 1 of the ’658 Patent to a representative TCG SSC: Opal compliant drive of Silicon Motion is attached hereto as Exhibit A.

26. MR Licensing has suffered damages as a result of Silicon Motion’s direct and indirect infringement of the ’658 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

27. MR Licensing has suffered, and will continue to suffer, irreparable harm as a result of Silicon Motion’s infringement of the ’658 Patent, for which there is no adequate remedy at law, unless Silicon Motion’s infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the ’776 Patent)**

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. MR Licensing has not licensed or otherwise authorized Silicon Motion to make, use, offer for sale, sell, or import any products that embody the inventions of the ’776 Patent.

30. Silicon Motion has and continues to directly and/or indirectly infringe one or more claims of the ’776 Patent, including without limitation, claim 1 of the ’776 Patent.

31. Silicon Motion has and continues to directly infringe the ’776 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’776 Patent.

32. Silicon Motion has and continues to indirectly infringe one or more claims of the ’776 Patent by knowingly and intentionally inducing others, including but not limited to, Silicon Motion’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the ’776 Patent.

33. Silicon Motion indirectly infringes one or more claims of the ’776 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Silicon Motion’s customers and end-users, in this Judicial District and elsewhere in the United States. For example, Silicon Motion’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the ’776 Patent. Silicon Motion induces this direct infringement at least via its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Silicon Motion’s inducement, Silicon Motion’s customers and end-users use Accused Instrumentalities and directly infringe the ’776 Patent in a way Silicon Motion intends. Upon information and belief, Silicon Motion performs these affirmative acts with knowledge of the ’776 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the ’776 Patent.

34. Silicon Motion indirectly infringes one or more claims of the ’776 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Silicon Motion’s affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others’ use and manufacture of the Accused Instrumentalities, such that the ’776 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the ’776 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by

Silicon Motion to be especially made or adapted for use in the infringement of the ’776 Patent. Silicon Motion performs these affirmative acts with knowledge of the ’776 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that it causes the direct infringement of the ’776 Patent.

35. A preliminary chart mapping the elements of claim 1 of the ’776 Patent to a representative TCG SSC: Opal compliant drive of Silicon Motion is attached hereto as Exhibit B.

36. MR Licensing has suffered damages as a result of Silicon Motion’s direct and indirect infringement of the ’776 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

37. MR Licensing has suffered, and will continue to suffer, irreparable harm as a result of Silicon Motion’s infringement of the ’776 Patent, for which there is no adequate remedy at law, unless Silicon Motion’s infringement is enjoined by this Court.

## COUNT III
## (Infringement of the ’303 Patent)

38. Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39. MR Licensing has not licensed or otherwise authorized Silicon Motion to make, use, offer for sale, sell, or import any products that embody the inventions of the ’303 Patent.

40. Silicon Motion has and continues to directly and/or indirectly infringe one or more claims of the ’303 Patent, including without limitation, claim 1 of the ’303 Patent.

41. Silicon Motion has and continues to directly infringe the ’303 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’303 Patent.

42. Silicon Motion has and continues to indirectly infringe one or more claims of the ’303 Patent by knowingly and intentionally inducing others, including but not limited to, Silicon Motion’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the ’303 Patent.

43. Silicon Motion indirectly infringes one or more claims of the ’303 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Silicon Motion’s customers and end-users, in this Judicial District and elsewhere in the United States. For example, Silicon Motion’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the ’303 Patent. Silicon Motion induces this direct infringement at least via its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Silicon Motion’s inducement, Silicon Motion’s customers and end-users use Accused Instrumentalities and directly infringe the ’303 Patent in a way Silicon Motion intends. Upon information and belief, Silicon Motion performs these affirmative acts with knowledge of the ’303 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the ’303 Patent.

44. Silicon Motion indirectly infringes one or more claims of the ’303 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Silicon Motion’s affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District

and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others' use and manufacture of the Accused Instrumentalities, such that the '303 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the '303 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Silicon Motion to be especially made or adapted for use in the infringement of the '303 Patent. Silicon Motion performs these affirmative acts with knowledge of the '303 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that it causes the direct infringement of the '303 Patent.

45. A preliminary chart mapping the elements of claim 1 of the '303 Patent to a representative TCG SSC: Opal compliant drive of Silicon Motion is attached hereto as Exhibit C.

46. MR Licensing has suffered damages as a result of Silicon Motion's direct and indirect infringement of the '303 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

47. MR Licensing has suffered, and will continue to suffer, irreparable harm as a result of Silicon Motion's infringement of the '303 Patent, for which there is no adequate remedy at law, unless Silicon Motion's infringement is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, MR Licensing prays for relief against Silicon Motion as follows:

a. Entry of judgment declaring that Silicon Motion has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. Entry of judgment declaring that Silicon Motion's infringement of the Patents-in-Suit is willful;

c. An order awarding damages sufficient to compensate MR Licensing for Silicon Motion's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d. An order pursuant to 35 U.S.C. § 283 permanently enjoining Silicon Motion, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

e. Entry of judgment declaring that this case is exceptional and awarding MR Licensing its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

f. An accounting for acts of infringement;

g. Such other equitable relief which may be requested and to which MR Licensing is entitled; and

h. Such other and further relief as the Court deems just and proper.

Dated: October 12, 2026

Respectfully submitted,

*/s/ Bryan N. DeMatteo*

Bryan N. DeMatteo
NY Bar No. 4021267
Email: bryan@demfirm.com
**DEMATTEO LAW LLC**
11028 Harbor Bay Drive
Fishers, IN 46040
Phone: 516-816-1571
Fax: 732-301-9202

*Attorney for Plaintiff,*
*MR Licensing LLC*